IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIL CROSTHWAIT, et al.,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>MORA CONSTRUCTION, INC., et al.,<br><br>　　　　Defendant.<br>_____/ | No. C 04-4907 JSW (MEJ)<br><br>**REPORT AND RECOMMENDATION RE: PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** |

### I.    INTRODUCTION

Before the Court is Plaintiffs' Motion for Default Judgment, filed on September 30, 2005. After careful consideration of Plaintiffs' papers, relevant statutory and case law authority, and Good Cause appearing, the Court hereby RECOMMENDS that the District Court GRANT default judgment against Defendant for the reasons set forth below.

### II.    BACKGROUND

**A.    Factual Background**

The following factual background of this case is taken from the Plaintiff's Complaint and moving papers. Plaintiffs Gil Crosthwaite and John Bonilla are Chairman and Co-Chairman of the Boards of Trustees for the various Operating Engineers Trust Funds named in the above entitled matter (collectively, "plaintiffs" or "the Trust Funds") and bring action herein in their respective

capacities on behalf of the Board of Trustees for the Trust Funds as fiduciaries of the Trust Funds. First Amended Complaint ¶ 1and 4.  The Trust Funds are either multi-employer, employee benefit plans within the meaning of Sections 3(3) and 3(37) of the Employee Retirement Income Security Act (ERISA,) 29 U.S.C. §§ 1002(3) and 1002 (37), or joint Labor Management trust funds or committees under § 302(c) of the Labor-Management Relations Act (LMRA), 29 U.S.C. § 186(c). Declaration of McBride ¶ 1.  Trust Funds are authorized to maintain suit as independent legal entities under Section 502(d)(1) of ERISA, 29 U.S.C., § 1132(d)(1).  Defendant, Mora Construction, Inc. ("Defendant") is a California corporation. Declaration of McBride ¶¶ 6-7.

Effective June 12, 2003, Mark C. Mora, as President of Mora Construction, Inc., executed an Independent Northern California Construction Agreement (hereinafter, "Independent Agreement") with Operating Engineers Local Union No.3. Declaration of McBride ¶3.  According to the terms of that Independent Agreement, Mora Construction, Inc. bound itself to the 2002-2006 Master Agreement for the Northern California between Operating Engineers Local Union No. 3 and various employer associations and to the terms of the Trust Agreements governing the Plaintiff Trust Funds. Declaration of McBride ¶3 and 8; *Id*. at Exhibit A.  For all times relevant to this action Mora Construction, Inc., has remained bound to the terms of these agreements. *Id*.

Under the terms of the Master Agreement Mora Construction, Inc. was required to pay monthly contributions to the Trust Funds at a specified rate for each hour worked by, or paid to, all employees performing covered work under the agreement. Declaration of McBride ¶4-5; *Id.* at Exhibit B; §§ 12.00.00 et. seq.  Such payments were to be made together with timely submission of monthly employer reports of covered work. *Id*.  Under the terms of the Master Agreement, if such reports and payments became delinquent, the employer would be liable not only for the amount of unpaid contributions but also for liquidated damages (in the greater amount of $35 or 15% of the amount due) plus interest at 12% per annum on the unpaid balance. *Id*.  In addition, the terms of the Trust Agreements for the various Trust Funds provide the administrator of the Trust Funds a right at any time to inspect and audit the records of the employer to determine whether monthly employer

2

reports and contributions are being made in accordance with the Master Agreement. Declaration of McBride ¶ 11; *Id*. at Exhibit F, Trust Agreement, Art. IV. Finally, the Master Agreement provides that a delinquent employer will be liable for the reasonable legal costs, attorney fees, and other expenses incurred by the Trust Funds in enforcing collection of the delinquent contributions and other fees owed under the agreements. Declaration of McBride ¶13; *Id*. at Exhibit B, § 12.13.02.

For the work months of July 2003 through June 2005, Mora Construction Inc. failed to timely remit monthly employer reports and contributions to the Trust Funds resulting, after credit for various incomplete payments, in a balance owed for unpaid contributions in the amount of $91,926.37, with interest (calculated to August 14, 2005) and liquidated damages owed in the amount of $30,046.57. Declaration of McBride ¶¶ 10 and 14, *Id*. at Exhibit E.  Calculating additional interest on the principal ($91,926.37) at 12% per annum from August 14, 2005, to December 8, 2005, additional interest has accrued in the amount of $3,505.79, for a total interest and liquidated damages of $33,552.36 with interest continuing to accrue at $30.22 per day. *Id*.  The Trust Funds have incurred costs to date in the amount of $499.00 and reasonable attorney's fees in the amount of $3,300. *Id*.  In executing the Independent Agreement on behalf of Mora Construction, Inc., Defendant Mark C. Mora, as its principal shareholder and officer, expressly guaranteed the payment of all fringe benefit contributions, liquidated damages, interest, and collection expenses, including the Trust Funds' costs and attorneys fees. Declaration of McBride ¶5; *Id*. at Exhibit A, the Independent Agreement ¶12.

**B.     Procedural Background**

On November 17, 2004, Plaintiff filed a Complaint.  On May 26, 2005, the Clerk of Court entered Entry of Default against Mora Construction, Inc. And Mark C. Mora. On July 5, 2005, Plaintiff filed an Amended Complaint for Audit, Breach of Contract, Damages and Injunction.  The claims for breach of contract and for injunction are based on Defendant's breach of the provisions of

3

the collective bargaining agreement and Master Agreement, and failure to complete monthly reports and/or to pay all moneys due under the Master Agreement. The claim for audit is based on Plaintiff's request that the Court reserve Plaintiff's contractual right to audit Defendant for the months prior to judgement, and in the event of such audit, collect any additional sums which may be due. Plaintiff duly served Defendant with process in this matter on July 5, 2005.

On August 19, 2005, Plaintiff filed a Motion for Entry of Default.

On August 22, 2005, the Clerk entered Default against Defendant Mora Construction, Inc. and Mark C. Mora.

On September 30, 2005, Plaintiff filed a Motion for Default Judgment as well as the Declarations of Tracy L. Mainguy and Wayne McBride in support thereof. Plaintiff sued for the delinquent contributions in the amount of $91,926.37; $33,552.36 in interest and liquidated damages (calculated to December 8, 2005) with further interest of $30.22 per day to date of judgment (54 days) $1,631.88; $3,300.00 in attorney fees, and $499.00 for the cost of suit. Plaintiff also submitted a proposed order.

On October 3, 2005, the Honorable Jeffrey S. White referred the instant matter to Magistrate Judge Maria-Elena James for a report and recommendation on Plaintiff's motion for default judgment.

On November 22, 2005, Plaintiff submitted Proposed Findings of Facts and Conclusions of Law.

On December 8, 2005, this Court held a hearing on the matter.

### III.   DISCUSSION

**A.   Personal and Subject Matter Jurisdiction**

When a court is considering whether to enter a default judgment, it has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as

void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place."). Here, Defendant is a California corporation, so the Court may exercise personal jurisdiction. Moreover, the Court has subject matter jurisdiction because Plaintiffs' claim arises from Defendant's violation of various duties under ERISA, 29 U.S.C. §§ 1132 (e)(1), and § 301(c) of the Labor Management Relations Act, 29 U.S.C. § 185(c).

**B.      Legal Standard**

Federal Rule of Civil Procedure ("FRCP") 55(b)(2) permits a court, following a default by a Defendant, to enter a final default judgment in a case. The court has discretion in determining whether to grant or deny a motion for entry of default judgment. *Draper v. Coombes*, 792 F.2d 915, 924 (9th Cir. 1986); *see also Kingvision Pay-Per-View, Ltd. v. Rivers*, 2000 WL 356378, *1 (N.D. Cal. 2000). "Generally, upon an entry of default, the factual allegations of the Plaintiff's Complaint will be taken as true." *Id.* "For a default judgment, well-pleaded factual allegations are sufficient to establish a defendant's liability. However, the allegations of the Complaint regarding the amount of damages suffered are not controlling." *Kingvision Pay-Per-View, Ltd. v. Backman, et al.*, 102 F. Supp. 2d 1196, 1197 (N.D. Cal. 2000) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Products*, 722 F. 2d 1319, 1323-24 (7th Cir. 1983); *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977)).

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the Plaintiff, (2) the merits of Plaintiffs' substantive claim, (3) the sum of money at stake in the action, (4) the possibility of a dispute concerning material facts, (5) whether the default was due to excusable neglect, and (6) the strong public policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Where a default judgment is granted, the scope of relief is limited by Federal Rules of Civil Procedure 54(c) and 55(d). "A judgment shall not be different in kind from or exceed in amount that prayed for in the demand for judgment" in the Complaint. Fed. R. Civ. P. 54(c), 55(d).

**C.  Legal Analysis**

The Court applies the following factors as articulated by the Ninth Circuit. *Eitel*, 782 F.2d at 1471-72.

First, the Court examines the possibility of prejudice to Plaintiff if default judgment is not granted. Here, Plaintiff and Defendant entered into a collective bargaining agreement under which Defendant is obligated to make benefit contributions. Were Defendant to have complied with the agreements as required, Plaintiff would have received contributions for hours worked and would not have incurred the requested attorneys' fees and costs in an attempt to enforce the agreements. Thus, the Court finds that Plaintiff would suffer prejudice if default judgment is not granted as Defendant's actions would continue to cause harm to Plaintiff, including the lack of contributions for all hours worked.

Second, the Court looks at the merits of the Plaintiff's substantive claim. In reviewing Plaintiff's Complaint, motion for default judgment, declarations and attached exhibits, the Court finds that the Plaintiff's have clearly established a valid claim for recovery by alleging an ERISA violation in that: (1) Plaintiff is part of a multi-employer plan as defined by Section 3(1) of ERISA; (2) Defendant is obligated to make benefit contributions under the terms of the plan; and (3) Defendant failed to make contributions as required by the plan. Thus, based on the pleadings, Plaintiff is entitled to damages as requested.

Third, the Court looks at the sum of money at stake in the action. This factor is meant to focus on the size of the award requested, as courts are hesitant to enter default judgments where large sums of money are at stake. *Sony Corp. v. Elm State Electronics, Inc.*, 800 F.2d 317, 320 (2nd Cir. 1986) ("court could have considered whether the entry of default would lead to a harsh result or to the entry of a large money judgment."). However, the *Eitel* court relied in part on the fact that Plaintiff was seeking "almost $3 million in damages" in holding that the district court did not abuse its discretion in denying a default judgment. *Eitel*, 782 F.2d at 1472. Here, there are not large sums of money at stake. Plaintiff seeks delinquent contributions in the amount of $91,926.37; $33,552.36

in interest and liquidated damages (calculated to December 8, 2005) with further interest of $30.22 per day to date of judgment (54 days) $1,631.88; $3,300.00 in attorney fees, and $499.00 for the cost of suit. Further, an award of liquidated damages, interest and attorneys' fees is mandatory under 29 U.S.C. § 1132(g). Thus, the Court finds that it would not be an abuse of the District Court's discretion to award the requested amount in this case and this factor does not mitigate against the entry of a default judgment.

The fourth factor of consideration is the possibility of a dispute concerning material facts. Here, Tracy Mainguy and Wayne McBride each provided declarations in support of Plaintiff's motion for default judgment. In Wayne McBride's declaration, he attests under penalty of perjury, that the contributions, liquidated damages, and interest owed by the Defendant were calculated in accordance with the methods called for in the Master Agreement. The Court notes that Plaintiff served Defendant in this action and Defendant failed to respond to any allegations in the Complaint, nor did Defendant file any opposition to Plaintiff's motion for default judgment. Accordingly, the Court finds that Defendant has shown no dispute concerning material facts.

Fifth, the Court examines whether the default was due to excusable neglect. The *Eitel* opinion makes clear that this factor is directed at determining whether the Defendant had cause for neglecting to file a timely response to the Complaint. *Eitel*, 782 F.2d at 1472. In *Eitel*, the court found excusable neglect where the Defendant did not file a timely answer due to a belief that the case had settled before his answer was due. *Id*. Here, the Defendant was duly served with the Complaint in June of 2004. Defendant has failed to submit any documents to the Court or appear to the hearing for Default Judgment. Accordingly, there are no grounds upon which this Court can find that the default resulted from excusable neglect.

Finally, the Court must make its determination in light of the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Although it is favorable to resolve cases on their merits, the case at hand does not warrant a denial of default judgment solely on that ground. Accordingly, the Court hereby RECOMMENDS that the District Court grant Plaintiffs'

Motion for Default Judgment.

## IV.   CONCLUSION

Based on the foregoing analysis, the Court hereby RECOMMENDS that the District Court GRANT Plaintiffs' Motion for Default Judgment in the following amounts: $91,926.37 in delinquent contributions; $33,552.36 in interest and liquidated damages (calculated to December 8, 2005) with further interest of $30.22 per day to date of judgment (54 days) $1,631.88; $3,300.00 in attorney fees, and $499.00 for the cost of suit.

Pursuant to Fed.R.Civ.P. 72, a party may serve and file objections to this Report and Recommendation within 10 days after being served with a copy of said report.

**IT IS SO RECOMMENDED.**

Dated: February 2, 2006

MARIA-ELENA JAMES
United States Magistrate Judge